## Lowther, et al. v. Kaufman, et al.

(Decided March 2, 1917.)

### Appeal from Magoffin and Floyd Circuit Courts.

Mines and Minerals—Judicial Sale of Rights.—Where vendees in title bonds for mineral rights in land fail to take up and pay for same, according to the original contracts and after the expiration of several years, the mineral rights are sold by the master commissioner, the purchaser at the sale is the exclusive owner of the mineral, and the original vendees have no interest therein.

E. W. PENDLETON, HOPKINS & LANE, W. H. LANE and J. C. HOPKINS for appellants.

N. P. HOWARD and O'REAR & WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

In January, 1906, E. H. Yost, of West Virginia, came into Floyd and Magoffin counties, Kentucky, and through agents, entered into contracts in writing with sixteen different land owners in the two said counties for the purchase of all the mineral in, under and on their lands, aggregating about 10,000 acres in all, at the agreed price of $5.00 per acre, the contracts providing that the lands should be surveyed and abstract of title made within six months from the date of the contract, and when this was done, the remainder of the purchase price should then become due. These contracts were taken to and in the name of John W. Kaufman.

Each land owner was paid a small part of the purchase price of the mineral. In some instances it was only $25.00, while in others it amounted to $100.00 or a little more. These written contracts were in effect title bonds;

and vested Kaufman with the equitable title to the mineral, and were recorded in the office of the clerk of the county court of the county where the land lay. The whole amount expended in procuring these title bonds was paid by Yost, amounting to about $2,800.00. Shortly thereafter, Yost returned to West Virginia. The lands were not surveyed, nor were the abstracts of title made. No effort at all was made by Yost or his associates to obtain deeds from the land owners. The land owners were ready, able and willing to deliver title, but could not locate Kaufman. On March 17th, 1906, Kaufman, in whose names the contracts were taken, sold and assigned all of his interest by written contract to E. H. Yost, for a recited consideration of $100.00, but the real consideration was the payment by Yost of all the expenses, and purchase money incurred in procuring these contracts, and the further consideration of Yost assuming the payment to the farmers of the balance of the purchase price of the minerals. It appears that Yost and Kaufman were intending to speculate upon the mineral by a resale thereof, but that conditions at the time were not over promising and Kaufman, having no money with which to pay his part of the expense, or the purchase price, conveyed the whole of his interest to Yost. This transfer, however, was not recorded in either Magoffin or Floyd counties, for some years thereafter, and the land owners did not know of Yost's connection with the transaction. Immediately after Kaufman assigned and transferred his interest in the mineral contracts to Yost, he left West Virginia and took up his abode in Illinois at a place at that time unknown to land owners or the other parties to this action. Kaufman was engaged in some litigation both at home, and as he claims, in Illinois, and kept very quiet.

Shortly after Yost acquired the interest of Kaufman, he, by written contract, conveyed a one-fourth interest to W. R. Fitch, of West Virginia, but it appears that Fitch actually paid only $172.56 for this conveyance, when his part as one-fourth owner was and should have been about $700.00. C. F. Lowther paid to Yost $400.00 on a note for W. R. Fitch, which was a part of the consideration of this conveyance, but Fitch never repaid Lowther. W. R. Fitch, becoming involved in financial difficulties, which finally swept him into bankruptcy, conveyed his one-fourth interest to Wm. J. Fitch, his father, of Buffalo. When the bankruptcy proceedings

were closed and W. R. Fitch had been discharged in bankruptcy, his father reconveyed to him the one-fourth interest. In 1908, E. H. Yost joining with C. F. Lowther conveyed all of the title which he acquired from Kaufman to Mrs. D. V. Lowther, for a recited consideration of $2,000.00. C. F. Lowther and Mrs. D. V. Lowther were husband and wife. None of these transfers were entered of record in the office of the clerk of the county court in either Floyd or Magoffin counties, Kentucky, and the land owners were in total ignorance of these several conveyances.

Becoming convinced that Kaufman, from whom they heard nothing for several years, was not going to pay for the mineral contracted to him, the land owners in Floyd and Magoffin counties (16 in number), brought separate suits in the circuit court of those two counties against Kaufman, for the purchase price, and to enforce the lien which they had against the property for the balance of the purchase money and interest, and sought a sale of the property to satisfy this debt. In reality these suits were intended to remove a cloud from the title produced by these title bonds, and to be relieved of Kaufman's claim. After these suits were filed, these several transfers were recorded in Magoffin and Floyd counties, and amended petitions were filed in each of the cases setting up the transfers, and making Mrs. Lowther and her husband, Fitch, Yost, and others, parties defendants. Warning orders were taken against each of these defendants.

Kaufman made no defense, but Mrs. Lowther, who claimed the entire title, appeared and filed her separate answer, setting up her claim, and raising the question that the lands had not been properly surveyed, and no complete abstract had been made or tendered to her showing the title in the plaintiffs. W. R. Fitch finally filed his answer and set up claim to a one-fourth interest.

The farmers and land owners recovered judgment against Kaufman for the balance of the purchase price, and a sale of the minerals mentioned in the title bonds was ordered to satisfy same, interest and cost.

A sale was had and Mrs. Lowther became the purchaser for the amount of the debt, interest and cost, and executed her purchase money bonds, with surety, to the master commissioner for the several amounts. After the sale, but before the confirmation thereof, John W. Kaufman, for the first time, appeared upon the scene

after his transfer to Yost, and filed his petition to be made party, setting up his claim to a one-fourth undivided interest in the property, alleging that while his transfer to Yost was absolute on its face, it was in fact a conveyance of only a three-fourths interest in the rights in the mineral, or in other words, that Yost was to take and hold a one-fourth interest for and on behalf of Kaufman, one-fourth for W. R. Fitch, one-fourth for C. F. Lowther and one-fourth for himself.     He also excepted to the report of sale made by the master commissioner.  Proof was taken at great length, and the sixteen cases were finally consolidated and heard together, both upon the exceptions and upon the issues involved.  Upon hearing the circuit court decided that Kaufman and the assignee of Fitch (H. H. Rice) were each entitled to a one-fourth interest in the property upon the idea that they were originally associated together, by contract, in the purchase of the property, or if not that, then that Yost under a subsequent agreement was trustee for and on behalf of Fitch and Kaufman and holding an interest for them.  In the judgment, however, the court realizing that Kaufman and Fitch had paid little or none of the purchase price or expenses incident to the taking of these title bonds, or the carrying of the same since January, 1906, and no doubt entertaining a suspicion as to the justness of their claims, made it a condition precedent to their right to enjoy these benefits, that they each pay into court on or before December 1st, 1913, a sum equal to one-fourth of the sum mentioned in the several purchase money bonds executed by Mrs. Lowther to the master commissioner, which, of course, covered the purchase price, interest and cost; and failing in this, the court reserved the right to set aside and annul so much of the order and decree as adjudged them entitled to a one-fourth interest in the property, and the case was continued for the purpose of giving Kaufman and Rice opportunity to make these payments.

Before December 1st, 1913, the limit fixed by the court, Kaufman paid into court the amount required of him, and asked to be adjudged entitled to a one-fourth interest in the property. This was the first money put into the deal by Kaufman. Rice, who was the assignee of Fitch and claiming a one-fourth interest under him, was unable to raise his one-fourth of the money and pay it into court before December 1st.  On December 1st, the court entered an order adjudging Kaufman entitled

to a one-fourth interest in the property and adjudging Rice to have forfeited his rights. In February following, Rice raised the sum required of him and paid it into court, and filed a pleading, supported by affidavit, attempting to show that he had been prevented from making the payments before December 1st, by the machinations and wrongful acts of Mrs. Lowther and her attorney, and insisting that he be allowed to take the one-fourth interest under the original judgment. This the court declined to allow, and from this order Rice appeals, and Mrs. Lowther prosecuted an appeal from the original order finding Kaufman to be entitled to a one-fourth interest.

A reading of the record will convince any experienced person that neither of the four original purchasers, Kaufman, Yost, W. R. Fitch, or C. F. Lowther, at the time of the making of the contracts in January, 1906, or for the next year or two thereafter, either hoped or intended to do anything with the property except speculate. All together they did not have money sufficient to take up and pay for the property. In fact they were able to command very little money. It is evident that they intended to find a purchaser, to whom they could turn over the property at a profit, and let their assignee assume the indebtedness to the land owners in Floyd and Magoffin counties, or else collect enough money from their assignee, with which to pay off these several land owners. They did not intend to take up and pay for the minerals themselves.

This plan, however, did not work as well as was anticipated. To avoid becoming liable, the transferees did not record their title papers so as to let the land owners know who was claiming their minerals, or to whom to look for the purchase price. The farmers who had contracted to sell their mineral to Kaufman, were waiting all these years in uncertainty, and with a cloud upon their title. They could neither collect their money, nor procure a return of the contracts.

The trial court adjudged that Kaufman and the assignee of Fitch each had a one-fourth interest in these contracts upon the idea that a trust resulted in favor of the two, by reason of the association and mutual undertaking between Yost, Lowther, Mrs. Lowther, Kaufman and W. R. Fitch. It is earnestly insisted by counsel for appellees that a trust did so result. There is much reason

for this contention. But this relation could not and did not continue beyond the decretal sale at which Fitch and Mrs. Lowther were competitive bidders. However this may be, it is not the decisive issue in this case. The land owners who had undergone the burden and whose property had been tied up for more than six years, without any reasonable excuse or compensation, were the only persons who had suffered by the transaction. Neither Kaufman nor Fitch had suffered any loss or inconveni- ence on account of the mineral contracts. These suits were brought by the land owners to recover the amount due them, if it could be had, or if not then to remove the cloud from their title. Mrs. Lowther had nothing to do with the institution of the actions. She was not even a party until some time after the institution of the ac- tions. Kaufman was the first defendant, but he was not only absent from Kentucky, but from his native home, West Virigina. He could not be served with process. A warning order attorney was appointed to correspond with him, but was unable to reach him. A judgment was entered directing a sale of the mineral rights, included in these contracts. This sale was had by the master com- missioner after due advertisement. Mrs. Lowther be- came the purchaser at the sale, even bidding against W. R. Fitch and his attorney, who were present at the time. She executed her bonds to the commissioner for the pur- chase price and these bonds were accepted, and the sale confirmed. No claim is made that Mrs. Lowther acted for Kaufman or Fitch in the bidding. Neither Kaufman, W. R. Fitch, or H. H. Rice contend, nor could they under the record in this case claim, that Mrs. Lowther, at the time she bid in the property, was either acting for them, or either of them, or anyone except herself. In fact she was bidding for the property against W. R. Fitch. He was there that day himself. Whatever rights Mrs. Lowther, Kaufman, Rice and Fitch had under the orig- inal contracts with the farmers were merged in the judgment under which the sale was had. The farmers had a right to enforce their claim for the money and to have a sale of this property for that purpose. At that sale Mrs. Lowther had the same right as any other per- son to bid or to become the purchaser, provided she complied with the conditions of the sale. She did this, but she was not acting for Kaufman or Fitch. Fitch and Kaufman each had the same right, but they did not avail themselves of it, and they are not in position to com-

plain that Mrs. Lowther protected her own interests by purchasing in the property. In fact she was the only person that was out money in the transaction up to that moment. She had expended a few thousand dollars upon the property. Neither, Fitch, Rice nor Kaufman had invested money in the property, nor had they paid any part of the taxes or other expenses incident to carrying the same. Whatever money they were out was in transactions among themselves. The whole record considered, it does not appear to this court that Kaufman or Rice has any equity which the court can recognize in these properties, and the lower court in adjudging Kaufman a one-fourth interest committed error to the prejudice of Mrs. Lowther. Entertaining these views, it is unnecessary for this court to consider the validity of the order of the circuit court of December 1st, 1913. For the reasons indicated the judgment is reversed as to John W. Kaufman, with directions to enter judgment in favor of Mrs. Lowther for the entire property purchased by her at the commissioner's sale upon the payment by her of the sale bonds. The judgment is affirmed as to H. H. Rice.